UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

_____

UNITED STATES OF AMERICA          )

        VS          )   CASE NO: 2:13-cr-69-1

MATTHEW J. MERRITT, JR.          )

_____)   CHANGE OF PLEA HEARING

BEFORE:   HONORABLE WILLIAM K. SESSIONS, III
         DISTRICT JUDGE

APPEARANCES:  TIMOTHY DOHERTY, JR., ESQUIRE
              Assistant U.S. Attorney
              P.O. Box 570
              Burlington, Vermont   05402
              Representing The Government


             DAVID V. KIRBY, ESQUIRE
              O'Connor & Kirby, P.C.
              174 Battery Street, 3rd Floor
              Burlington, Vermont   05401
              Representing The Defendant


DATE:        July 11, 2013


         TRANSCRIBED BY:  Anne Marie Henry, RPR
               P.O. Box 1932
              Brattleboro, Vermont   05302

```
 1              (The Court opened at 9:40 a.m.)

 2         THE CLERK:  This is case number 13-69, United

 3  States of America versus Matthew Merritt.  The government is

 4  present through Assistant United States Attorney Timothy

 5  Doherty.  The defendant is present in the courtroom with his

 6  attorney David Kirby.  The matter before the Court is a

 7  competency hearing.

 8         THE COURT:  First, this is a competency hearing.

 9  The Court has received the report from Dr. Wilmouth.  Both

10  sides receive copies of the report?

11         MR. KIRBY:  Yes.

12         MR. DOHERTY:  Yes, Your Honor.

13         THE COURT:  I read the report.  In essence she has

14  found that Mr. Merritt is competent to stand trial, is

15  competent to consult with counsel, is fully aware of the

16  nature of the proceedings.  And her recommendation is that

17  the case proceed based upon her determination that

18  Mr. Merritt was competent.

19         Does either party feel there is a need to have her

20  testify?  Because, frankly, from the review of this

21  particular report, the Court feels there is no need to have

22  her testify.  You tell me.

23         MR. DOHERTY:  From the government's perspective we

24  don't need Dr. Wilmouth to testify.  And the standard of

25  proof here is preponderance of the evidence.  The Court can
```

1   certainly consider Dr. Wilmouth's report in its

2   determination.  So we don't think that there's a need for

3   her to come here and testify.  We don't have any specific

4   questions.

5            It's also my understanding that the defense is not

6   going to contest the competency determination as set forth

7   in Dr. Wilmouth's report.

8            THE COURT:  Is that correct, Mr. Kirby?

9            MR. KIRBY:  Yeah, that, yes, sir, that's right.

10  We, I've read the report.  And we are reassured by it.  And

11  a lot of concerns that I had the last time we appeared

12  before you have been allayed over, through that report and

13  through further discussions with Mr. Merritt.

14           So, no, we're, I think we're ready to go forward

15  and do not contest competency.

16           THE COURT:  All right.  The Court will accept the

17  report of Dr. Wilmouth, find by a preponderance of the

18  evidence that Mr. Merritt is competent to stand trial.

19           Now, the Court has been given a plea agreement

20  signed by both the government and Mr. Merritt.  And my

21  question is, is Mr. Merritt prepared to enter a plea

22  pursuant to the agreement, in which case we'll go to a

23  change of plea, or does the defense request additional time?

24           MR. KIRBY:  No, Your Honor.  We're prepared to go

25  forward with the plea today.

1                THE COURT:  All right.  Mr. Merritt, would you

2    stand, please?

3                MR. MERRITT:  Sure.

4                THE COURT:  I'm going to ask you a whole series of

5    questions.  If you don't understand anything that I ask let

6    me know and I'll be glad to explain.  And also if you wish

7    to speak with Mr. Kirby let me know that, I'll provide you

8    an opportunity to speak with him.  Do you understand that?

9                MR. MERRITT:  Yes, sir.

10               THE COURT:  I'm also going to ask that you be

11   placed under oath and would advise you if you answer any

12   questions falsely from this point forward you could be

13   prosecuted for perjury or false swearing.  Do you understand

14   that?

15               MR. MERRITT:  Yes, Your Honor.

16               THE COURT:  Would you place Mr. Merritt under

17   oath, please?

18               M A T T H E W   M E R R I T T,   The Witness,

19   after being duly sworn, was examined and testified as

20   follows:

21               DIRECT EXAMINATION BY THE COURT:

22   Q.   Would you state your full name?

23   A.   Matthew J. Merritt, Junior.

24   Q.   And how old are you, Mr. Merritt?

25   A.   Sir?

1   Q.    How old are you?

2   A.    I'll be 82 September the 15th.

3   Q.    And how far did you go through school?

4   A.    College and graduate school.

5   Q.    Have you ever been hospitalized for drug or alcoholic

6   treatment?

7   A.    No, sir.

8   Q.    Are you currently or recently under the care of a

9   physician or psychiatrist?

10  A.    Yes.

11  Q.    And for any particular ailments or illnesses?

12  A.    Cardiology.

13  Q.    Are you receiving any medication?

14        MR. KIRBY:  Your Honor, I mean, I think there are

15  a few things.  His right eye, he's, he just saw his eye

16  doctor.  I think he's losing or has lost sight in his right

17  eye.  I mean, I think there are a number of issues that are

18  going on other than just cardiology.

19  Q.    So there's cardioligy, colloquy heart issues.  There's

20  an issue with your eye.  What other issues do you have for

21  which you are receiving treatment?

22  A.    Well, um, the urologist for some bladder infection.

23  And, you know, minor kind of a thing.

24  Q.    You taking any medication?

25  A.    Yes, sir.

1  Q.   What is that?

2  A.   You shouldn't ask that.  I don't remember what I take.

3  I have folks take my medication put together at home.

4  Q.   Well, apparently a person puts all of your medication

5  in a box --

6  A.   Yes, my daily, yeah.

7  Q.   -- per day?

8       When did you last take those medications?

9  A.   This morning.

10 Q.   Were any of those medications related to opiates, for

11 instance, pain medications?

12 A.   No, sir.

13 Q.   As a result of taking those medications, do those

14 medications impact your ability to understand what's

15 happening today?

16 A.   No, Your Honor.

17 Q.   Do you, in fact, understand what's happening today?

18 A.   I do, Your Honor.

19      THE COURT:  Do either counsel for the defendant or

20 government of any reason to believe that Mr. Merritt could

21 not freely and voluntarily waive his right to proceed by

22 indictment and enter a plea to the information?

23      MR. DOHERTY:  No, Your Honor.

24      MR. KIRBY:  No, Your Honor.

25 Q.   Have you received a copy of the information?

```
 1    A.    I have, Your Honor.

 2    Q.    Do you wish that I read the charges in the information

 3    or would you waive their reading?

 4    A.    I would waive that, sir.

 5    Q.    Have you had an adequate opportunity to go over these

 6    charges with Mr. Kirby?

 7    A.    I have, sir.

 8    Q.    Are you satisfied with the representation he's

 9    provided?

10    A.    Most definitely.

11    Q.    Do you understand that you have a right proceed by an

12    indictment of a grand jury but that you could waive that

13    right and proceed on the information?

14    A.    I do understand that.

15    Q.    And do you understand that a grand jury is made up of

16    between 16 and 23 people and that at least 12 grand jurors

17    would have to find there's probable cause to believe that

18    you committed the offense for which you have been charged?

19    A.    I do.

20    Q.    Do you wish to waive your right to proceed by

21    indictment and proceed on the information?

22    A.    I do, sir.

23    Q.    And are you doing that freely and voluntarily?

24    A.    I am, sir.

25              THE COURT:   Mr. Kirby, do you have a waiver form?
```

1          MR. KIRBY:  Yes, I do.

2          THE COURT:  Okay.

3          (Form happened had to the Court.)

4    Q.   All right.  The Court is in receipt of a waiver of

5    indictment form which has been signed by Mr. Merritt and

6    Mr. Kirby as well.  The Court will execute the form, find

7    that the waiver has been made freely and voluntarily and

8    knowingly and will accept the waiver.

9          Now, has Mr. Kirby explained to you the nature and

10   the elements of each of the charges here together with any

11   defenses that you may have?

12   A.   Yes, he has, sir.

13   Q.   There are two separate charges.  Do you understand if

14   this matter was to go before a jury that the government

15   would have to prove beyond a reasonable doubt that from at

16   least 2004, to the fall of 2011, in Vermont, and elsewhere,

17   you knowingly and willfully executed a scheme to defraud a

18   healthcare benefit program, namely, the Vermont Medicaid

19   Program, in connection with the delivery of payment of

20   healthcare benefits and items and services?  You understand

21   that?

22   A.   I do, sir.

23   Q.   And do you understand the maximum penalty provided for

24   by that statute is a period of imprisonment of not more than

25   three years, a term of supervised release of not more than

 1    one year, a fine of not more than $250,000, together with a

 2    special assessment of $100.

 3              MR. KIRBY:  Your Honor?

 4              THE COURT:  Yes.

 5              MR. KIRBY:  Did you say a term of imprisonment of

 6    three years?

 7              THE COURT:  Yes.  Oh, I'm sorry, 10 years.

 8              MR. KIRBY:  Are you talking about the healthcare

 9    fraud?

10              THE COURT:  Yes.  It's 10 years and three years,

11    right.  Right.

12              Let me go through that again.  Do you understand

13    that the maximum penalty is a period of imprisonment of up

14    to 10 years, up to a three year period of supervised

15    release, a fine of not more than $250,000 together with a

16    $100 special assessment?

17              THE WITNESS:  I do understand.

18    Q.   And you understand the Court has the power, if it deems

19    it an appropriate, to order that you pay for all costs of

20    imprisonment, probation or supervised release?

21    A.   No.

22    Q.   Pardon me?

23    A.   I don't think I understood that.

24    Q.   Do you understand the Court has the power, if it deems

25    it appropriate, that you pay for all costs of imprisonment,

1   probation and supervised release?

2   A.   I understand, sir.

3   Q.   And as to count one how do you wish to plead, guilty or

4   not guilty?

5   A.   Guilty.

6   Q.   Now, in regard to count two, do you understand that if

7   this matter were to go to trial that the government would

8   have to prove beyond a reasonable doubt that on or about

9   October 15, 2009 you willfully subscribed a 2008 Federal

10  Income Tax Form 1040, which was verified by written

11  declaration that it was made under the penalties of perjury,

12  that you did not believe those forms to be true and accurate

13  as to every matter that was filed with I.R.S., essentially

14  you misstated your taxable income.   Do you understand that?

15  A.   I do, sir.

16  Q.   And do you understand the maximum penalty provided for

17  by count two, and that's a period of imprisonment of not

18  more than three years, a period of supervision of up to one

19  year, a maximum possible fine of $250,000, together with a

20  $100 special assessment?

21  A.   Yes, sir.

22  Q.   And, again, do you understand the Court has the power,

23  if it deems it appropriate, to order that you pay for all

24  costs of imprisonment, probation or supervised release?

25  A.   I do, sir.

1   Q.   And as to count two how do you wish to plead, guilty or

2   not guilty?

3   A.   Guilty.

4   Q.   I'm going to explain to you all of your constitutional

5   rights, together with the fact that you would be waiving

6   those rights by pleading guilty today.  I ask that you

7   listen carefully to the rights as I explain them because at

8   the end I'm going to ask that you acknowledge understanding

9   those rights together with the fact that you would be

10  waiving those rights by pleading guilty today.  Do you

11  understand that?

12  A.   I do, sir.

13  Q.   Do you understand that you have a right to plead not

14  guilty and to persist in that plea, that you would then have

15  the right to a trial by jury, at trial you'd be presumed to

16  be innocent and the government would have to prove your

17  guilt beyond a reasonable doubt, you'd have the right to the

18  assistance of counsel for your defense, the right to see and

19  hear all witnesses and have them cross-examined in your

20  defense, the right on your own part to decline to testify if

21  you voluntarily chose to do so, the right to the issuance of

22  subpoenas to require the attendance of witnesses to testify

23  in your defense, the right to testify and present evidence?

24  A.   I do, sir.

25  Q.   Do you understand those rights?

1    A.    Yes, sir.

2    Q.    Do you understand if you chose not to testify or put on

3    any evidence those facts could not be used against you in

4    any way?

5    A.    I do, sir.

6    Q.    And do you understand that if you plead guilty and I

7    accept your plea that you would be waiving your right to a

8    trial and the other rights I've just explained, there will

9    be no trial, I'll enter a judgment of guilty and sentence

10   you on the basis of your plea after considering a

11   Pre-Sentence Report?

12   A.    I do, sir.

13   Q.    And do you understand that you would be waiving your

14   right against self-incrimination and your right to appeal

15   the merits of your case?

16   A.    I do, sir.

17   Q.    Has anyone threatened you or anyone else or forced you

18   in any way to plead guilty today?

19   A.    No, sir.

20   Q.    The Court is in receipt of a plea agreement which bares

21   your signature on Page 7, Page 8 actually.  Actually, it's

22   Page 9.  Is that your signature?

23   A.    It is, sir.

24   Q.    On the last page?

25   A.    Yes.

1    Q.    Prior to signing the agreement did you read it?

2    A.    Yes, I did, sir.

3    Q.    Did you go over the agreement with Mr. Kirby?

4    A.    Yes, sir.

5    Q.    And did you understand it?

6    A.    Yes, sir.

7    Q.    All right.  Let me go through the high points of the

8    agreement just to make sure that my understanding is

9    consistent with yours.  And tell me if it's not.  This is on

10   Page 8.

11          According to this agreement you would waive your

12   right to proceed by indictment, you'd enter a plea of guilty

13   to counts one and two of the information, the maximum

14   penalties I've described to you already, you've agreed not

15   to commit any other crimes whether federal, state or local,

16   you've agreed to pay the $100 special assessment in regard

17   to both of these offenses.  That's a total of $200.  And

18   there are a number of specific provisions in your plea

19   agreement that both you and the government agreed to.

20          The first is that you agree to the civil

21   settlement agreement which was attached to this plea

22   agreement.  And my understanding is that that has already

23   been completed, is that correct?  Payment has been paid?

24   A.    Yes, sir.

25          MR. KIRBY:  Yes.

1        MR. DOHERTY:  Yes, Your Honor.

2  Q.   Okay.  So that civil agreement has been accepted.  That

3  you also stipulate and agree that there's an additional tax

4  due and owing for 2008 and 2009 tax years of 48,338 and

5  $27,695 respectively.  And do you know if those have been

6  paid back?

7        MR. KIRBY:  They haven't yet.  We're trying to

8  make arrangements right now, but, to get a, a form that can,

9  we can pay them back.  They will be paid back.

10 Q.   So, clearly, your understanding is that you've got

11 these tax obligations, you agree to the tax obligations in

12 this settlement, and it's in those dollar amount?

13 A.   Yes, sir.

14 Q.   This is also part of a global settlement underlying the

15 entire investigation and including all of the other

16 co-defendants being brought in by the government.  In

17 addition, if you abide by the terms of the agreement the

18 government agrees to do the following for you:  First, they

19 are not prosecute you in Vermont for any other offenses

20 known by them as of the date of the signing of this

21 agreement which relates to your fraudulent activity and also

22 your income tax related charges.  They'll recommend a

23 sentence at the low end of the guideline range if the final

24 offense level is 15 or above.  They will recommend that you

25 receive credit for acceptance of responsibility provided

1    that you can truthful and honest with the probation officer

2    during the pre-sentence process and no additional

3    information comes to the attention to the government which

4    bares on the question of acceptance of responsibility.  And,

5    finally, there is what is essentially a cap on the sentence

6    pursuant to Rule 11 Cl C. in this plea agreement.  And I'll

7    explain to you exactly what that means.

8            The cap is 24 months.  Essentially, if the Court,

9    after reviewing the Pre-Sentence Report and hearing the

10   argument of counsel, wishes to impose a sentence in excess

11   of 24 months then you would have the right to withdraw your

12   guilty plea, return to a not guilty plea and then proceed to

13   sentencing.

14           If the Court was to accept the plea agreement and

15   be bound by that cap of not imposing a sentence in excess of

16   24 months then you would not have the right to withdraw your

17   guilty plea.

18           Essentially, that's what an 11 C1C plea means.  In

19   other words, if I will tell if I would intend to impose a

20   sentence in excess of 24 months then you would have the

21   right to withdraw your guilty plea.

22   A.    I understand.

23   Q.    Do you understand that?

24   A.    I understand, sir.

25   Q.    All right.  In addition, the government has indicated

1    that they have not made any promises or predictions as to a

2    sentence you're likely to receive with the exception of it

3    cannot be in excess of 24 months without your ability to

4    withdraw your plea.  And if the government determines that

5    you violated this agreement they reserve the right to

6    withdraw from the agreement and prosecute you for any

7    offenses they deem appropriate, or alternatively, withdraw

8    from your obligations under the agreement while requiring

9    you to maintain your guilty plea.  Do you understand that?

10   A.    I understand.

11   Q.    In sum and substance those are the major parts of the

12   agreement.  Is that consistent with your understanding?

13   A.    It is.

14   Q.    Have there been any other promises or representations

15   made by anyone that's induced you to plead guilty today?

16   A.    No, sir.

17   Q.    Have you gone over the guidelines with Mr. Kirby?

18   A.    Yes, sir.

19   Q.    Has anyone made any promises or predictions as to what

20   sentence you are likely to receive?

21   A.    No, sir.

22   Q.    Do you understand that any promises or predictions as

23   to what sentence you're likely to receive are not binding

24   upon the Court?  Based upon your guilty plea I could impose

25   a sentence up to the maximum permitted by law and that you

1  would not have the right to withdraw your plea if those

2  predictions proved to be inaccurate?

3  A.    I do, sir.

4  Q.    And you understand that --

5           MR. KIRBY:  Your Honor, that would be all bounded

6  by the 24 months cap?

7  Q.    That's correct.  All with that restriction pursuant to

8  a Rule 11 C1C that the Court could not impose a sentence

9  beyond 24 months without you being able to withdraw your

10  guilty plea.  Do you understand that?

11  A.    I do, sir.

12  Q.    Do you understand that in some circumstances the Court

13  has the power to impose a sentence that is more severe or

14  less severe than the guidelines call for, if I were to

15  impose a sentence that was nor severe you still could not

16  withdraw your guilty plea unless it was in excess of 24

17  months?  Do you understand that?

18  A.    I understand, sir.

19  Q.    And do you understand the guidelines are now advisory

20  in nature and the Court will consider all of the factors

21  under 18 U.S.C., Section 3553(a) in determining what is the

22  appropriate sentence?  Do you understand that?

23  A.    I understand, sir.

24  Q.    And, finally, in the federal system parole is

25  abolished.  If you are sentenced to prison you will not be

1    released on parole.  Do you understand that?

2    A.   I didn't understand that, sir.

3    Q.   There is no parole system in the federal system.   In

4    other words, there's no parole board, there's no releasing

5    somebody on parole.  If you are sentenced to prison you

6    would do the prison term and then be released upon the

7    completion of your sentence, there is no parole.

8    A.   I understand that.

9    Q.   Do you understand that?  All right.

10            Now, I'm going to ask Mr. Doherty to provide a

11   factual basis for the plea, to describe what happened here.

12   I'd ask that you listen carefully to his explanation of the

13   facts because at the end I'm going to ask whether those

14   facts are accurate.  All right?

15            MR. KIRBY:  Can I have one moment, Your Honor?

16            THE COURT:  Yes.

17            (Defendant conferring off the record with the

18   defendant)

19            MR. KIRBY:  Your Honor, could Mr. Merritt sit?

20   His legs are bothering him.

21            THE COURT:  Yes, right.

22            MR. MERRITT:  Thank you.

23            THE COURT:  In fact, you can remain seated Mr,

24   Merritt.  Okay.  All right.

25            MR. DOHERTY:  Thank you, Your Honor.  Your Honor,

1    if this case were to go to trial the government believes it

2    could prove the following beyond a reasonable doubt:  For

3    many years, including the entire time period pertinent to

4    this case, Mr. Merritt, Junior served as the President of

5    the Bennington School, of Bennington School Incorporated, a

6    corporation that ran a residential school located in

7    Bennington, Vermont that provided a variety of therapeutic

8    and educational services for socially, emotionally

9    challenged boys and girls.

10          The tuition and other expenses for the vast bulk

11   of Bennington School Students was paid by state and local

12   agencies who had a legal responsibility for the education

13   and care of those students, including the State of Vermont,

14   which placed many students at Bennington School.

15          The State of Vermont, through the Division of Rate

16   Setting, which is within the Agency of Human Services, set

17   rates for payments for tuition and other expenses for

18   Vermont boys and girls enrolled at the Bennington School.

19          From at least 2004 until 2008, when the State of

20   Vermont froze its rates, the rate was based on a review by

21   the Division of Rate Setting of an annual submission from

22   Bennington School describing its expenses running the

23   school.

24          In 2008, when the rates were frozen, the Division

25   of Rate Setting, sometimes referred to as DRS, replied upon

1   Bennington School's prior submissions for its annual rate

2   determinations.

3          Mr. Merritt, Junior, and other Bennington School

4   managers, were aware that the Division of Rate Setting

5   excluded some expenses from its rate calculation, including

6   what the Division of Rate Setting deemed to be excessive or

7   unreasonable compensation to managers.

8          Mr. Merritt, Junior understood that higher

9   allowable expenses would support a higher rate and thereby

10  greater payments from the State of Vermont to Bennington

11  School.

12         The State of Vermont used multiple funding sources

13  to pay Bennington School for students, including funds from

14  the Agency of Education and from Medicaid.  Almost all of

15  Vermont's Bennington School students were eligible for

16  Medicaid.  And Medicaid funded the majority of payments that

17  flowed from Vermont to Bennington School because all

18  Bennington School students received healthcare treatment.

19         The Vermont Medicaid Program is jointly funded by

20  both the federal government and the State of Vermont.

21         From at least 2004 to 2011 Mr. Merritt, Junior

22  supervised the system that paid certain officers and

23  employees of Bennington School compensation that was outside

24  of their regular wages.  This compensation included

25  different ways that certain officers and employees received

1  personal benefits, including cars, gasoline for a vehicle,

2  oil for a personal residence, as well as corporate payments

3  on credit cards used for personal expenses.

4          Several officers and employees had set amounts of

5  personal expenses that were paid each year from Bennington

6  School.  These personal expenses were falsely listed on the

7  books and records of Bennington School as legitimate

8  corporate expenses.

9          These false entries were also included on the

10  Bennington School records submitted to the Division of Rate

11  Setting for calculation of the payments from the State of

12  Vermont to Bennington School.

13          From at least 2004 to 2011, under Mr. Merritt,

14  Junior's direction, Bennington School falsely reported

15  hundreds of thousands of dollars of expenses as allowable

16  expenses when, in fact, they were not.

17          The Vermont Division of Rate Setting has

18  calculated that these false reports cost the State of

19  Vermont to overpay Bennington School in excess of 3.5

20  million dollars.

21          Through this conduct, in the District of Vermont

22  and elsewhere, Mr. Merritt, Junior, knowingly and willfully

23  executed a scheme to defraud a healthcare benefit program,

24  namely the Vermont Medicaid Program, in connection with the

25  delivery of and payment for health benefits, items and

1    services, namely payments for Vermont students for services

2    received at the Bennington School by causing the submission

3    of false and fraudulent expense reports regarding the

4    operations of Bennington School.  He did this in violation

5    of 18 U.S.C., Section 1347.

6            Moreover, Mr. Merritt, Junior was himself one of

7    the Bennington School Officers who received compensation

8    from Bennington School outside of his regular wages in the

9    form of paid personal expenses.  Mr. Merritt, Junior

10   regularly failed to report this income on his federal income

11   tax form 1040.

12           For example, as described in count two of the

13   information, on or about October 15 of 2009 Mr. Merritt,

14   Junior willfully subscribed a 2008 Federal Income Tax Form

15   1040 stating that his taxable income was $228,886 when he

16   knew and believed that he had earned income in excess of

17   that amount.  This was in violation of 26 U.S.C., Section

18   7206 (1).

19           THE COURT:  All right.  Mr. Merritt, is that what

20   happened?  You can actually remain seated.  That's fine.

21           THE WITNESS:  That's all right.  I'm fine.  Yes,

22   that's what happened.

23           THE COURT:  And could the government prove those

24   facts, Mr. Kirby?

25           MR. KIRBY:  Yes, I think they could.

1          THE COURT:  You can actually be seated at this

2    point.  Since you acknowledge that you are in fact guilty as

3    charged, that you know your right to a trial, the maximum

4    possible sentence, since you are voluntarily pleading

5    guilty, I will accept your guilty plea.

6          Do you still wish to plead guilty at this point?

7          MR. MERRITT:  Yes, sir.

8          THE COURT:  And are you pleading guilty freely and

9    voluntarily with a full understanding of the nature of the

10   charges and the rights that you are waiving?

11         MR. MERRITT:  I am, sir.

12         THE COURT:  Okay.  The Court having questioned the

13   defendant and counsel on the offer of his, the defendant and

14   counsel having advised the Court they have conferred

15   concerning the offered plea and all aspects of the charges

16   against the defendant, any defenses he may have, the Court

17   having questioned the defendant and counsel on the offer of

18   his plea, the Court also having advised that the, or

19   observed the defendant making his answers, his apparent

20   intelligence and his attitude, and the Court having observed

21   he does not appear to be under the influence of any

22   medication, drug or other substance which may affect his

23   judgment, the Court hereby finds that the offer of the plea

24   of guilty has a factual basis, is free of any coercive

25   influence of any kind, is competently and voluntarily made

1    with full knowledge of the charges against him and the

2    consequences of the plea, there have been no promises of any

3    kind made to him by anyone apart from the statements setd

4    forth in plea agreement and no threats or coercion have been

5    exerted upon him in any manner.

6            The Court will accept the guilty plea, defer

7    acceptance of the plea agreement, order a Pre-Sentence

8    Report.  Sentencing is now scheduled for Monday, December

9    2nd at 9:30.

10           Now, the Court had reviewed in the past a report

11   from the Pre-Trial Services Office, which I have it here

12   recommending release subject to conditions.  Does the

13   Government have any objection to his release subject to the

14   conditions recommended by Pre-Trial Services?

15           MR. DOHERTY:  No.

16           THE COURT:  Any objection to those conditions,

17   Mr. Kirby?

18           MR. KIRBY:  I don't believe I've seen the report

19   or the conditions, but I assume that they are the standard

20   conditions.

21           THE COURT:  They are standard conditions, except

22   they are standard conditions.  The defendant will be

23   released subject to the following conditions:  That he

24   promises to appear in court as required.  And that also

25   under eight, Section 8, that he report to Pre-Trial Services

1    as directed.  That he refrain from possessing a firearm,

2    destructive device or other dangerous weapon.  That he

3    report as soon as possible to Pre-Trial Services any contact

4    with law enforcement personnel including, but not limited

5    to, arrest, questioning or traffic stops.  And that he

6    maintain contact with his attorney.

7             Any objection to those conditions?

8             MR. KIRBY:  Your Honor, I don't have an objection

9    to those conditions, but the firearm, we'll have to make

10   arrangements, I'm sure that Mr. Merritt has some firearms at

11   his home so -- it will take us a day or two to deal with

12   that.

13            THE COURT:  That needs to be resolved immediately.

14            All right.  Mr. Merritt, you are being released

15   subject to the conditions.  And I just want to tell you it

16   is extraordinarily important that you abide by the

17   conditions, that you maintain contact with your Pre-Trial

18   Services Officer.  All right.  Thank you.

19            (The Court recessed at 1010 a.m.)

20

21

22

23

24

25